STATE OF CONNECTICUT *v.* RICARDO COLLINS
(AC 29000)

DiPentima, Gruendel and Lavine, Js.

Argued September 22—officially released December 23, 2008

*Pamela S. Nagy*, special public defender, for the appellant (defendant).

*Adam E. Mattei*, special deputy assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Howard S. Stein*, assistant state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. The defendant, Ricardo Collins, appeals from the judgment of conviction, rendered following a jury trial, of murder in violation General Statutes § 53a-54a (a), felony murder in violation of General Statutes § 53a-54c and robbery in the first degree in violation of General Statutes § 53a-134 (a) (2). On appeal, the defendant claims that the trial court improperly admitted evidence of his involvement in a shooting that took place several months prior to the events that led to the current prosecution. We conclude that the danger of unfair prejudice resulting from the admission of that evidence far outweighed its probative value. Accordingly, we reverse the judgment of the trial court.[1]

The jury reasonably could have found the following facts. The victim, Calvin Hopkins,[2] and his former girlfriend, Quiana Staton, jointly operated a "business" in which Staton sold marijuana and Hopkins sold crack cocaine. At approximately 10:30 on the night of December 2, 2002, Hopkins went to Staton's Bridgeport apartment in a public housing project known as the Greens. He came to the apartment carrying a large "wad of cash" and retrieved an additional $500 to $600 from

---

[1] The defendant also claims that (1) an improper jury instruction regarding the defense theory deprived him of his rights pursuant to the fifth, sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution and (2) the court permitted the defendant to waive his right to competent counsel without properly determining that such waiver was voluntary, intelligent and knowing. In light of our disposition of the defendant's principal claim, we do not consider these claims, as it is unlikely that they will arise on remand. See *Prentice v. Dalco Electric, Inc.*, 280 Conn. 336, 339 n.3, 907 A.2d 1204 (2006), cert. denied, 549 U.S. 1266, 127 S. Ct. 1494, 167 L. Ed. 2d 230 (2007).

[2] The victim was alternatively known as Calvin Atkins and "C-Hop."

Staton's safe. Staton testified that Hopkins intended to use the money to purchase additional crack cocaine. Hopkins left Staton's apartment with the money at approximately 12 a.m. on the morning of December 3, 2002. He spoke to Staton on his cellular telephone approximately one hour later from his car in the parking lot of the apartment complex. During that conversation, Staton looked from her window to see Hopkins in his car talking to two unknown individuals. Staton later attempted to call Hopkins' cellular telephone at approximately 2 a.m. and again at 3 a.m. but received no answer to either of those calls.

Later that morning, at approximately 7:15, Bridgeport police were dispatched to a scene a short distance from Staton's apartment complex where a green sedan was parked in the road preventing a school bus from passing. Upon opening the door to the vehicle, the police discovered Hopkins "reclined in the front seat with his head leaning back and what appeared to be a large amount of blood in the interior of the vehicle."

At the scene, a physician from the medical examiner's office recovered a bullet shell casing from Hopkins' collar, and the currency that Hopkins had been carrying in the earlier hours of the morning was not found on his body. Two anomalous fingerprints were found on the vehicle: the defendant's fingerprint was found on the exterior of the rear driver's side door and that of another individual, Anthony Berrios, was found on the exterior of the front passenger door. An autopsy later revealed that Hopkins died from a gunshot wound to the head, and bullet fragments were recovered from his head.

The defendant became a suspect in this case because of his involvement in the nonlethal shooting of his cousin's husband, Stephen Rose, in August, 2002. A firearms examiner testified at trial that the shell casing recovered

from Hopkins' collar at the scene of the homicide was fired from the same weapon that had been used in the August, 2002 Rose assault.

In the separate prosecution for the Rose shooting, the defendant was convicted of assault in the first degree in violation of General Statutes § 53a-59 (a) (3) and carrying a pistol or revolver without a permit in violation of General Statutes § 29-35 (a). He also was found to have used a firearm in the commission of a class B felony in violation of General Statutes § 53-202k.[3] In his appeal from that conviction, this court determined that "[t]he jury reasonably could have found the following facts. On the afternoon of August 28, 2002, the defendant was walking near the intersection of Pembroke and Jane Streets in Bridgeport. The victim, Stephen Rose, was driving by that intersection in his employer's vehicle when he saw the defendant. Rose was acquainted with the defendant, who is a cousin of Rose's then wife. Rose wanted to speak with the defendant because he believed that the defendant recently had stolen and crashed a new car that Rose had purchased for his wife.

"The victim stopped his vehicle, exited it and called to the defendant. The victim confronted the defendant about the stolen car, and the defendant denied involvement. Further conversation ensued, and the dispute escalated. The two men were standing several feet apart when the defendant pulled a gun from the waistband of his pants. The victim raised his hands in the air but did not retreat to his vehicle, and he called the defendant a 'bitch.' The defendant began firing his weapon into the pavement on either side of the victim, shooting four times. The bullets ricocheted, striking a nearby residence and the vehicle driven by the victim. Thereafter

---

[3] As will be discussed, during the defendant's trial for the Hopkins murder, the jury heard testimony about his involvement in the Rose shooting. We therefore briefly set forth the facts of that earlier case.

the victim lunged at the defendant in an attempt to tackle and disarm him. While the two men briefly were physically engaged, the defendant fired his weapon a fifth time. This gunshot entered the victim's elbow and lodged in his upper arm, causing serious injury.

"The victim fell to his knee and clutched his wounded elbow. The defendant then struck the victim on the head with the butt of his weapon and walked away. Emergency personnel arrived and transported the victim to the hospital where he underwent surgery to remove the bullet from his arm and received stitches to repair a cut on his head." *State* v. *Collins*, 100 Conn. App. 833, 836, 919 A.2d 1087, cert. denied, 284 Conn. 916, 931 A.2d 937 (2007).

The defendant turned himself in to the Bridgeport police in January, 2003, for the Rose shooting. During the course of the police questioning, the defendant admitted to shooting Rose but also indicated that he had since sold the gun. See id., 837 n.6. While in police custody for the Rose shooting, the defendant was also questioned with regard to the Hopkins homicide. In his statement to police, the defendant admitted meeting with Hopkins in his car to purchase drugs during the night of December 2, 2002, but denied killing him.

The defendant's initial trial for Hopkins' murder was declared a mistrial after the jury returned deadlocked. At the subsequent trial, which resulted in the conviction, from which the defendant appeals, the state sought to introduce evidence of the defendant's role in the Rose assault, to which the defendant objected.[4] The defendant, who was representing himself at the time, argued that any testimony regarding the Rose shooting would be "highly prejudicial" and of little probative value. He further argued that "[t]he state . . . has me testifying

---

[4] The defendant's initial objection to the testimony took the form of an oral motion in limine.

that I had a gun and it got other evidence, and I was convicted of it, and I really don't see a need for this testimony here because . . . it would inflame the jury . . . . I'm on trial right now for this murder case, and it's a shooting case. It's two shooting cases. And if they was to bring Stephen Rose, I think . . . no matter what your instruction would be to the jury . . . that it still would be lingering in them that somebody got shot. And I would ask that you not allow it in."

The court determined that the probative value of the evidence outweighed its potential for unfair prejudice; see Conn. Code Evid. § 4-3; and overruled the defendant's objection. It did, however, instruct the jury that the evidence could not be used to infer bad character of the defendant or his tendency to commit criminal acts. The defendant later objected to similar testimony, which was also overruled.

During deliberations, the jury twice communicated to the court that it was unable to reach a unanimous verdict as to one of the counts charged. After each communication from the jury, the court instructed it to continue its deliberations, the second time giving a formal Chip Smith instruction.[5] The jury eventually returned a verdict of guilty of murder, felony murder and robbery in the first degree on March 21, 2006. The court rendered judgment in accordance with the jury's verdict, and the defendant was sentenced to forty-five years in prison on the merged counts of murder and felony murder and ten years on the count of robbery in the first degree. This appeal followed.

---

[5] "The purpose of the [Chip Smith] instruction is to prevent a hung jury by urging the jurors to attempt to reach agreement. It is a settled part of Connecticut jurisprudence . . . . D. Borden & L. Orland, 5 Connecticut Practice Series: Connecticut Criminal Jury Instructions (2d Ed. 1997) § 4.4, p. 245." (Internal quotation marks omitted.) *Monti* v. *Wenkert*, 287 Conn. 101, 112 n.4, 947 A.2d 261 (2008).

On appeal, the defendant claims that he "was deprived of a fair trial when the court allowed the state to introduce evidence about the Rose shooting." He argues that the probative value of evidence that he had shot and injured Rose did not overcome the risk of prejudice to his defense, even with the limiting instruction given by the court. He further asserts that although it may have been probative that he once owned a gun that produced shell casings that match the one found on Hopkins' collar, the fact that he shot Rose with that gun was irrelevant to proving anything for which such evidence would be admissible. The state, conversely, has not spent much time addressing the merits of the defendant's arguments. Rather, it argues that his claim is unpreserved and that the defendant waived his claim by permitting his statement with regard to the Rose shooting to be admitted into evidence. Either of these arguments presented by the state, if accepted, would be dispositive of the case, and we therefore begin by addressing them.

## I

### A

We first address the question of whether the defendant properly preserved his claim. The state contends that because the defendant objected only to the testimony of Rose and Detective Joseph Gallagher, the defendant's failure to object to the other instances in which evidence of the Rose shooting was admitted renders the defendant's claim on appeal unpreserved. "Practice Book § 60-5 provides in relevant part that [this] court shall not be bound to consider a claim unless it was distinctly raised at the trial . . . . In order to preserve an evidentiary ruling for review, trial counsel [or the pro se party] must object . . . to a ruling of evidence [and] state the grounds upon which objection is made . . . to preserve the grounds for appeal. . . .

These requirements are not simply formalities. . . . We consistently have stated that we will not consider evidentiary rulings where counsel did not properly preserve a claim of error by objection . . . ." (Internal quotation marks omitted.) *State* v. *Swain*, 101 Conn. App. 253, 270, 921 A.2d 712, cert. denied, 283 Conn. 909, 928 A.2d 539 (2007).

On the first day of trial, the defendant presented an oral motion in limine outside of the jury's presence regarding "the Stephen Rose testimony,"[6] in which he sought to prevent the state from presenting evidence that "somebody got shot." After the defendant presented his argument, the state indicated that it had recommended that the court hear the motion at that particular point because its next witness, Gallagher, intended to testify about the Rose shooting. Although the defendant never mentioned Gallagher in the oral motion, the state and the court appear to have understood the motion as seeking to exclude any evidence regarding the Rose shooting, and not simply to prevent Rose himself from testifying.

Both parties argued the motion on its merits, and after a brief recess, the court denied the defendant's motion. Later, when the state began to question Gallagher regarding the Rose shooting, the defendant objected. After the jury was excused, the defendant again noted that the probative value of the testimony regarding the Rose shooting would be outweighed by its prejudicial effect. The prosecutor replied that "this was the subject of the motion in limine before this matter arose. And . . . I believe the court has already ruled on this matter. I believe the defendant just wants the record to reflect his continuing objection to the court's previous rulings." In ruling on the objection, the court stated: "Well, again, you're aware [of] the order

---

[6] We note that Rose was never called as a witness at trial.

that I . . . did enter. I'm obviously not going to be changing that, but for the record, your continuing objection is noted . . . ."

The defendant's motion and later objection, the state's responses and the court's rulings reflect an understanding at the time that the defendant was objecting to and the court was ruling on any evidence regarding the Rose shooting—not merely the testimony of Gallagher and Rose. In addition, Practice Book § 60-5 specifically provides in relevant part that "[i]n jury trials, where there is a motion, argument, or offer of proof or evidence in the absence of the jury, whether during trial or before, pertaining to an issue that later arises in the presence of the jury, and counsel has fully complied with the requirements for preserving any objection or exception to the judge's adverse ruling thereon in the absence of the jury, the matter shall be deemed to be distinctly raised at the trial for purposes of this rule without a further objection or exception provided that the grounds for such objection or exception, and the ruling thereon as previously articulated, remain the same." We conclude, therefore, that the defendant was not required to object each time that the Rose shooting was mentioned and that his claim was preserved properly.

## B

We now turn to the state's argument that the defendant waived his claim. After the court denied the motion in limine and overruled the objection discussed previously, the defendant agreed to the introduction of his statement to police regarding the Rose shooting. The state argues that this agreement amounts to a waiver of his claim regarding the prejudice resulting from the introduction of testimony about the Rose shooting. The state further asserts that the defendant's agreement to

admit his statement renders any possible error regarding the admission of other evidence of the Rose shooting harmless. In other words, it asserts that because the defendant later permitted the introduction of evidence of the shooting, he could not have been harmed by the earlier introduction of similar evidence by the state. These arguments are logically and legally flawed.

The state cites several cases in support of its argument that stand for the proposition that "[a]n erroneous ruling should not be considered reversible error if the evidence admitted thereby has already properly entered the case." (Internal quotation marks omitted.) *State* v. *Boyd*, 178 Conn. 600, 604, 424 A.2d 279 (1979). *Boyd* stands for the proposition that when evidence is already admitted properly, subsequent improper admission of similar evidence is harmless. The state asserts that the opposite is also true—that if evidence is admitted improperly, subsequent proper admission of similar evidence should render the earlier admission harmless. As a matter of simple logic, that is not the case.

In the present case, prior to introduction of the defendant's statement into evidence, the state had already introduced a plethora of evidence regarding the Rose shooting. The defendant's decision to permit his statement to be introduced can reasonably be understood to have been an attempt to limit the damage done by the earlier evidence about the Rose shooting. The statement described the ways in which the defendant was provoked by Rose prior to the shooting, and it also indicated that the defendant had since sold the gun used.

The argument that the state presents here is similar to that presented in *State* v. *Shashaty*, 251 Conn. 768, 742 A.2d 786 (1999), cert. denied, 529 U.S. 1094, 120 S. Ct. 1734, 146 L. Ed. 2d 653 (2000). In *Shashaty*, the trial court ordered that the pro se defendant be shackled during his trial but that the courtroom would be

arranged in such a way as to prevent the jury from seeing the shackles. Id., 784. The defendant objected to the order, and the court overruled that objection. Id. As a result of the order, the defendant questioned the venire members regarding their ability to remain impartial in light of his appearing in shackles. Id. The state argued that by bringing the shackles to the attention of the venire, the defendant waived his ability to contest the shackle order on appeal. Our Supreme Court disagreed. It held that "the defendant's decision to alert jurors to the fact that he was wearing shackles cannot serve to waive his claim that the shackling order violated his constitutional rights. . . . In contrast [to the cases cited by the state], the trial court's decision in this case to order that the defendant remain shackled was not instigated by any legal action taken by the defendant; rather the court's decision preceded it. Therefore, because the defendant's decision concerning how best to respond to the court's shackling order cannot serve as the basis for a waiver of his claim, his claim is reviewable." Id., 786.

The present case is analogous to *Shashaty*. Here, the court's decision to permit the introduction of evidence regarding the Rose shooting was not instituted by any legal action taken by the defendant; instead, the court's decision preceded it. Therefore, because the defendant's decision concerning how best to respond to the court's admission of the testimony cannot serve as the basis for a waiver of his claim, his claim is reviewable. See id. We will not force the defendant to choose between preserving an objection to the admissibility of evidence and attempting to ameliorate the effect that such evidence has on the jury.

## II

Having addressed the state's dispositive arguments, we turn to the merits of the defendant's appeal. As

noted previously, the defendant claims that the probative value of evidence of the Rose shooting did not overcome the risk of prejudice, even with the limiting instruction given by the court. He further asserts that although it may have been probative that he once owned a gun that produced shell casings that match the shell casing found on Hopkins' collar, the fact that he shot Rose with that gun was not necessary to prove any element of the state's case. The state does not directly refute the defendant's claim on appeal. Rather, it relies on its arguments addressed previously, insisting that the defendant's claim on appeal was waived and is unpreserved.

We begin our analysis by setting forth the applicable standard of review. "[E]vidence of prior unconnected crimes is inadmissible to demonstrate the defendant's bad character or to suggest that the defendant has a propensity for criminal behavior [but] such evidence may be admissible for other purposes, such as to prove knowledge, intent, motive, and common scheme or design, if the trial court determines, in the exercise of judicial discretion, that the probative value of the evidence outweighs its prejudicial tendency. . . . That evidence tends to prove the commission of other crimes by the accused does not render it inadmissible if it is otherwise relevant and material . . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Citation omitted; internal quotation marks omitted.) *State* v. *Ellis*, 270 Conn. 337, 354–55, 852 A.2d 676 (2004).

"[W]hen evidence of other crimes is offered for some proper purpose, the question of whether its prejudicial value outweighs its probative value becomes a material consideration." *State* v. *Mortoro*, 160 Conn. 378, 391,

279 A.2d 546 (1971). Connecticut Code of Evidence § 4-3 provides: "Relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice or surprise, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." Relevant evidence may be excluded if it would "unduly arouse the jury's emotions, hostility or sympathy." *State* v. *DeMatteo*, 186 Conn. 696, 702, 443 A.2d 915 (1982).

The testimony relating to the Rose assault clearly fits into the category of evidence that would have unduly aroused the jury's emotions and hostility. It painted the defendant as a gun toting criminal with a proclivity for shooting people. The evidence was not admissible for that purpose. See *State* v. *Dunbar*, 51 Conn. App. 313, 325–26, 721 A.2d 1229 (1998), cert. denied, 247 Conn. 962, 724 A.2d 1126 (1999). Consequently, the testimony would have unduly prejudiced the jury, while its probative value was minimal.

The testimony of several individuals was introduced at trial regarding the Rose shooting. The portion of the testimony relevant to the crimes for which the defendant was on trial was simply that which would prove that he had at some time owned a gun that produces shell casings that match the one found on Hopkins' collar. It would have been sufficient for the state simply to introduce evidence to that effect without going into the details of the defendant's involvement with the assault on Rose. Cf. *State* v. *Mortoro*, supra, 160 Conn. 387–91 (reversing judgment where court admitted evidence of defendant's planning armed holdup unrelated to charges at issue); *State* v. *Dunbar*, supra, 51 Conn. App. 325–26 (prosecution for unlawful possession of weapon reversed because evidence admitted of prior arrest for weapon violation).

Concluding that the court abused its discretion in admitting the prejudicial testimony does not end our inquiry, however. "When an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful." (Internal quotation marks omitted.) *State* v. *Sawyer*, 279 Conn. 331, 352, 904 A.2d 101 (2006). The standard for demonstrating harmful error requires the defendant to show that "the jury's verdict was substantially swayed by the error." Id., 357. Further, a "nonconstitutional error is harmless when an appellate court has fair assurance that the error did not substantially affect the verdict." (Internal quotation marks omitted.) Id.

In the present case, the defendant met this burden. The defendant's first trial resulted in a hung jury and a mistrial. Similarly, in the trial that resulted in a verdict and from which the defendant appeals, the jury twice indicated that it was deadlocked, although it did not indicate on which charge it was unable to reach a consensus. There was no eyewitness to the crime, and the only tangible evidence linking the defendant to the crime was the shell casing and a fingerprint. Given the overall strength of the state's case, we cannot say that we have a fair assurance that the error did not substantially affect the verdict. See id., 358–60.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.