STATE OF CONNECTICUT *v.* REGINALD L. BOYD
(AC 28992)

Flynn, C. J., and Bishop and Borden, Js.

Argued January 20—officially released July 7, 2009

*Mary Anne Royle*, special public defender, for the appellant (defendant).

*Laurie N. Feldman*, special deputy assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Charles M. Stango*, assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, C. J. The defendant, Reginald L. Boyd, appeals from the judgment of conviction, rendered after a jury trial, of criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1) and threatening in the second degree in violation of General Statutes § 53a-62. On appeal, the defendant claims that (1) the

trial court improperly failed to instruct the jury on the doctrine of nonexclusive possession with regard to the firearm and (2) the evidence was insufficient to sustain his conviction. We affirm the judgment of the trial court. We conclude that the court's charge sufficed to guide the jury and that it is not reasonably possible that the jury was misled. We further conclude that the evidence and the reasonable inferences to be drawn therefrom sufficed to establish that the defendant constructively possessed the firearm found in the vehicle in which he was a passenger and subsequently threatened its driver, Keenan Sneed.

The jury reasonably could have found the following facts. On September 4, 2005, at approximately 1 a.m., fifteen year old Sneed drove a minivan in Bridgeport with his friend, Evan Sheffield, who was approximately seventeen or eighteen years old, as a passenger. Sneed believed the van belonged to Sheffield's uncle, from whom Sheffield had borrowed the vehicle; in fact, the van was registered to another man whom Sneed did not know. Although Sneed did not possess a driver's license, Sheffield asked him to drive because Sheffield had a headache.

Sneed and Sheffield proceeded to a McDonald's restaurant on North Avenue. Prior to the trip, the two searched the van looking for tools or "blades" belonging to Sheffield's uncle. Sneed testified that he searched the front of the van and Sheffield the remainder and they found nothing on the floor of the van. After leaving the restaurant, they encountered the defendant on Vine Street. The defendant asked for a ride to the east side of town, and Sneed agreed to transport him a portion of the way. The defendant entered the van and seated himself behind the driver's seat in the backseat, where he was the only passenger.

Shortly after Sneed resumed driving, he saw the flashing lights of a police car and realized he was going

to be stopped. The defendant told Sneed to "[k]eep driving," but Sneed stopped the van and put it into park. The police officers made the traffic stop due to the fact that Sneed appeared to be too young to be driving, became nervous when he saw the policemen and failed to signal properly when making a turn. The officers determined that Sneed did not have an operator's license and ordered him, Sheffield and the defendant out of the vehicle. One of the officers, David Riehl of the Bridgeport police department, noticed a handgun, later determined to be an operable, loaded Walther .25 caliber semiautomatic weapon, on the floor of the van beside the defendant's right foot. When asked to describe the location of the firearm in relation to the defendant, Riehl testified that the handgun was "[h]alf an arm's length . . . basically, right at his feet." When he exited the van, the defendant was in possession of a forty ounce bottle of beer and had an odor of alcohol about him, but two officers testified that he did not appear to be intoxicated.

The defendant, Sneed and Sheffield were taken into custody and transported to the police station. Sneed testified that at the police station the defendant told him to "take the blame" and "say the gun was [his]." When Sneed refused to do so, the defendant threatened him, saying, "I'm going to have my people come and see you." Sneed took the defendant's words to mean that the defendant would have him killed. Sneed also testified that the gun was not his and that the first time he became aware of it was when the officers announced that they had found it. After being given *Miranda*[1] warnings, the defendant provided the police a written statement in which he denied ownership and possession of the gun.

---

[1] See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

The defendant thereafter was charged with criminal possession of a firearm pursuant to § 53a-217 (a) (1), possession of a weapon in a vehicle without a permit pursuant to General Statutes § 29-38 and threatening in the second degree pursuant to § 53a-62. The defendant also was charged, by way of a part B information, with being a persistent serious felony offender under General Statutes § 53a-40 (2) (c). Following the presentation of the state's case, the parties stipulated to the fact that, on the date in question, the defendant was a convicted felon. The defendant moved for a judgment of acquittal on all charges on the ground that the state had not presented sufficient evidence for conviction. The court denied the motion. The jury found the defendant guilty on both possession charges as well as on the threatening charge. Following the guilty verdict, the defendant entered a guilty plea on the part B information.

Prior to sentencing, the court granted the defendant's motion for a judgment of acquittal as to the charge of possession of a weapon in a motor vehicle without a permit.[2] The defendant was sentenced to a total effective term of six years incarceration, with a two year mandatory minimum, to run consecutively to a sentence he already was serving. The present appeal followed. Additional facts will be provided where necessary.

I

The defendant first claims that the court improperly failed to instruct the jury on the doctrine of nonexclusive possession with regard to the firearm. As a result of this failure, he argues, it is reasonably probable that the jury was misled into inferring impermissibly that

[2] The defendant moved for acquittal on the charge of possession of a weapon in a motor vehicle without a permit on the ground that no evidence had been presented bearing on whether he in fact had been licensed to carry a firearm on the night in question. Acknowledging the lack of evidence, the state offered no objection. The court granted the defendant's motion.

the defendant actually or constructively possessed the firearm solely because he was present in the automobile. We disagree.

After reading to the jury the relevant portions of § 53a-217 (a) (1),[3] the court charged the jury as follows: " 'Possess' as defined in § 53a-3 (2) of the [General] Statutes means to have physical possession or otherwise to exercise dominion or control over tangible property. The law recognizes two kinds of possession, actual possession and constructive possession. Actual possession means that the defendant knowingly and intentionally had the firearm on his person or in his hands, that he had actual physical control over it. It is not necessary, however, that the defendant has actual possession of the firearm. It is also sufficient if he had constructive possession of it. Constructive possession means that the defendant knew of the nature of the firearm, that he knew of its presence, and that he exercised dominion and control over it. Constructive possession means that the defendant, although not in actual possession, *knowingly had the power and the intention in exercising dominion and control over the firearm.*

"Having dominion or control over it means that there was a continuing relationship between the defendant and the firearm. Control is the power or authority to guide or manage. The essence of exercising control is being in a position of control coupled with the *knowledge of the nature of the item and with the intent to have control over it.* As long as the firearm was in a place where it was subject to the defendant's dominion and control where he could if he wished go and get it, it was in his constructive possession and that possession was illegal if the defendant knew of the nature of the firearm and knew of its presence.

---

[3] General Statutes § 53a-217 (a) provides in relevant part: "A person is guilty of criminal possession of a firearm . . . when such person possesses a firearm . . . and (1) has been convicted of a felony . . . ."

"Whether the defendant had possession of the firearm in this case is a question of fact for you to decide, and you may, as I have told you, draw reasonable and logical inferences from the evidence. If you find that the state has proven beyond a reasonable doubt each of the elements of the crime of criminal possession of firearm, then you shall find the defendant guilty. On the other hand, if you find that the state has failed to prove beyond a reasonable doubt any one of the elements, you shall find the defendant not guilty." (Emphasis added.)

The defendant's failure either to request a charge on nonexclusive possession or to object to the instruction as given renders his claim unpreserved. See Practice Book § 42-16. He therefore seeks to prevail pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine. See Practice Book § 60-5. The record is adequate for review, and the claim is of constitutional magnitude, alleging the violation of a fundamental right. "[I]t is . . . constitutionally axiomatic that the jury be instructed on the essential elements of a crime charged. . . . Consequently, the failure to instruct a jury on an element of a crime deprives a defendant of the right to have the jury told what crimes he is actually being tried for and what the essential elements of those crimes are." (Internal quotation marks omitted.) *State* v. *Fleming*, 111 Conn. App. 337, 350, 958 A.2d 1271, cert. denied, 290 Conn. 903, 962 A.2d 794 (2008). However, the defendant has not demonstrated that a constitutional violation clearly exists and that he was clearly deprived of a fair trial. We therefore conclude that his claim is without merit.

Our standard of review with regard to claims of instructional error is well established. "[I]ndividual jury instructions should not be judged in artificial isolation, but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in

its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error." (Internal quotation marks omitted.) *State* v. *Jackson*, 283 Conn. 111, 117, 925 A.2d 1060 (2007). "Where . . . the challenged jury instructions involve a constitutional right, the applicable standard of review is whether there is a reasonable possibility that the jury was misled in reaching its verdict." (Internal quotation marks omitted.) *State* v. *Fabricatore*, 281 Conn. 469, 477, 915 A.2d 872 (2007).

The defendant does not argue that the court improperly instructed the jury with regard to the elements of the crime of criminal possession of a firearm. Instead, he essentially contends that, under the facts and circumstances of this case, the court had a duty to instruct the jury further on the doctrine of nonexclusive possession. We conclude, following a thorough review of the entire jury charge in light of the evidence presented at trial, that the court properly instructed the jury on the elements of the crime.

Our Supreme Court has defined the doctrine of nonexclusive possession as follows: "Where the defendant is not in exclusive possession of the premises where the [illegal item is] found, it may not be inferred that [the defendant] knew of the presence of the [illegal item] and had control of [it], unless there are other incriminating statements or circumstances tending to buttress such an inference. . . . The doctrine of nonexclusive possession was designed to prevent a jury from inferring a defendant's possession of [an illegal item] solely from the defendant's nonexclusive possession of the premises where the [illegal item was] found. . . . When the doctrine applies, an instruction *focuses the*

*jury's attention on the defendant's knowledge and intent to possess*, precluding it from inferring possession from the mere fact that the defendant, along with others, occupied or had access to the premises wherein the contraband was found." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Williams*, 258 Conn. 1, 7–8, 778 A.2d 186 (2001).

The jury reasonably could not have been misled by the court's charge in the manner asserted by the defendant. The court clearly instructed the jury that to find that the defendant had possessed the firearm, whether actually or constructively, it would have to determine that he had knowledge of the nature of the weapon, of its presence within the vehicle and either had it on his person or in a position to exercise dominion and control over it. Importantly, the court instructed the jury not only that the defendant had to have such knowledge, but also that he must have acted intentionally. In another portion of the jury instruction, the court explained fully the definition of intent.[4] This focus on the defendant's knowledge and control and intentional action with regard to the firearm properly directed the jury and precluded it from considering that the mere presence of the defendant was enough to satisfy the elements of the crime. The given instruction, though not explicitly addressing nonexclusive possession, nonetheless covered the most important protective elements of a charge

---

[4] The court stated: "Intent relates to the condition of mind of the person who commits the act [and] his purpose in doing it. As defined by our statute[s], a person acts intentionally with respect to a result or to conduct when his conscious objective is to cause such result or engage in such conduct. What a person's intention is has usually been . . . a matter to be determined by inference. No person is able to testify that he looked into another's mind and saw therein a certain intention to do harm to another. The only way in which a jury can ordinarily determine what a person's intention was at any given time, aside from that person's own statements or testimony, is by determining what the person's conduct was and what the circumstances were surrounding that conduct and from that, infer what his intention was."

on the doctrine, as noted by the court in *Williams*: the defendant's knowledge and intent to possess the weapon. See id., 8.[5]

Furthermore, this is not a case in which the court declined a requested instruction; the defendant made no request of the court to charge the jury on the doctrine of nonexclusive possession. A defendant's right to due process is implicated by a court's failure to instruct the jury on the essential elements of the crime charged. *State* v. *Cote*, 286 Conn. 603, 626, 945 A.2d 412 (2008). However, "[a] trial court has no independent obligation to instruct, sua sponte, on general principles of law relevant to all issues raised in evidence . . . . Rather, it is the responsibility of the parties to help the court in fashioning an appropriate charge." (Citation omitted; internal quotation marks omitted.) *State* v. *Arena*, 235 Conn. 67, 75, 663 A.2d 972 (1995); see also *State* v. *Crawley*, 93 Conn. App. 548, 568, 889 A.2d 930 (rejecting defendant's claim that court sua sponte should have instructed jury on doctrine of nonexclusive possession where defendant failed to request such charge and failed to object to its absence), cert. denied, 277 Conn. 925, 895 A.2d 799 (2006). Because we conclude that the defendant has not demonstrated that a constitutional violation clearly existed depriving him of a fair trial, his claim must fail. See *State* v. *Golding*, supra, 213 Conn. 240.[6]

---

[5] The *Williams* court noted: "[I]n order to establish possession of the firearm for a conviction under § 53a-217 by constructive possession, [the state] was required to prove beyond a reasonable doubt that the defendant had exercised intentional dominion and control over the firearm and that he had knowledge of its character." *State* v. *Williams*, supra, 258 Conn. 12.

[6] The defendant also seeks to prevail on his claim under the plain error doctrine. "It is . . . well established that plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A defendant cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Jackson*,

## II

The defendant next argues that the evidence was insufficient to support the jury's guilty verdict with regard to both the criminal possession of a firearm charge and the threatening charge. We are not persuaded.

Our analysis is guided by the familiar standard of review for sufficiency of the evidence claims. We undertake a twofold inquiry: "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"It is within the province of the jury to draw reasonable and logical inferences from the facts proven. . . . The jury may draw reasonable inferences based on other inferences drawn from the evidence presented. . . . Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable. . . .

"[T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . We do not

---

73 Conn. App. 338, 386, 808 A.2d 388, cert. denied, 262 Conn. 929, 814 A.2d 381 (2002). Having concluded that the defendant was not deprived of a fair trial when the court did not sua sponte instruct the jury on nonexclusive possession, we also conclude that the claim does not warrant application of the plain error doctrine.

sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. . . . Furthermore, [i]n our review of the evidence to determine its sufficiency, we do not look at the evidence to see whether it supports the defendant's innocence. . . . Instead, our focus is whether there is a reasonable view of the evidence that supports the [trier's] verdict of guilty." (Citations omitted; internal quotation marks omitted.) *State* v. *Fleming,* supra, 111 Conn. App. 342–43. We now proceed to the defendant's claims, which we address in turn.

### A

The defendant claims that the evidence was insufficient to support the jury's guilty verdict on the charge of criminal possession of a firearm pursuant to § 53a-217 (a) (1). He specifically contends that though the "evidence at trial showed a temporal and spatial nexus between [him] and the handgun," it was insufficient to prove that he had possessed the firearm. We do not agree.

Pursuant to the statute, the state's burden is to prove beyond a reasonable doubt that the defendant, who must be a convicted felon, possessed a firearm. Because the defendant stipulated to the fact that he was a convicted felon on the evening of the incident, the only question with regard to the sufficiency of the state's evidence pertains to the possession element.

Upon a thorough review of the record, and viewing the evidence in the light most favorable to sustaining the verdict, we conclude that the evidence was sufficient to sustain the defendant's conviction. Contrary to the implications of the defendant's argument, there was significant evidence beyond the defendant's mere presence in the van and the simultaneous presence of the firearm nearby. There was evidence that Sneed and Sheffield had searched the van looking for tools or

"blades" prior to the defendant's entering the van. Sneed testified that they found nothing and that the floor of the van was empty. After Sneed and Sheffield searched the vehicle and after the defendant entered it, the police found the handgun near the defendant's feet when the van was stopped. The evidence showed that the defendant was the only occupant of the backseat of the van, where the firearm was located. The firearm was found within the immediate proximity of the defendant, as close as a "[h]alf an arm's length . . . basically, right at his feet." Sneed also testified that the weapon was not his and that he had no knowledge of the weapon's presence before it was found by the police. Further, Sneed's testimony regarding the defendant's insistence that he continue driving after the police had signaled for Sneed to stop and his testimony regarding the defendant's threatening demands that Sneed take responsibility for the firearm may have been considered by the jury properly as evidence of the defendant's possession of the weapon. Viewing the evidence in the light most favorable toward sustaining the verdict, as we are required to do, we conclude that the evidence was sufficient to support the jury's verdict on the charge of criminal possession of a firearm.

## B

The defendant also challenges the sufficiency of the evidence proffered on the charge of threatening in the second degree. Specifically, he argues that the evidence was insufficient because the circumstances made a threat of imminent harm by the defendant toward Sneed an impossibility because the defendant spoke the words in question while in custody at the police station. We disagree.

General Statutes § 53a-62 provides in relevant part: "(a) A person is guilty of threatening in the second degree when: (1) By physical threat, such person intentionally places or attempts to place another person in

fear of imminent serious physical injury . . . ." With regard to this statute, this court has stated: "It is not the danger or risk of injury, but the victim's perception, which is essential to the . . . crime." (Internal quotation marks omitted.) *State* v. *Gibson*, 75 Conn. App. 103, 123, 815 A.2d 172 (2003), rev'd in part on other grounds, 270 Conn. 55, 850 A.2d 1040 (2004).

The defendant focuses on the location where he spoke to Sneed, the police station, and contends that his words could not have put Sneed in "imminent harm" because Sneed also was in custody and the defendant was "not in a position to carry out any threat." However, this argument misses the point. "[T]he law does not equate imminent with immediate. A threat does not require immediate menace of violence or acts showing a present ability and will to execute the threat. . . . A threat imports the expectation of bodily harm, thereby inducing fear and apprehension in the person threatened. A threat, unlike an assault, is not limited by time or distance." (Internal quotation marks omitted.) *State* v. *Gibson*, supra, 75 Conn. App. 123–24.

The jury in the present case heard testimony that, upon being stopped by the police and found with a firearm, the defendant attempted to get Sneed to take responsibility for the weapon. The evidence further showed that upon Sneed's refusal to comply, the defendant told him: "I'm going to have my people come and see you." Sneed testified as to his understanding of these words, i.e., that the defendant would have someone try to kill him. Under § 53a-62 and the interpretive case law thereof, it was not necessary that the defendant attempt to harm Sneed immediately or even be able to harm him that soon. We conclude that the evidence was sufficient to sustain the jury's verdict on that charge.

The judgment is affirmed.

In this opinion the other judges concurred.