STATE OF CONNECTICUT *v.* BRANDEN HOLLOWAY
(AC 29051)

DiPentima, Lavine and West, Js.

Argued May 18—officially released November 10, 2009

*Mark Rademacher*, assistant public defender, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Rita M. Shair* and *Richard Colangelo*, senior assistant state's attorneys, for the appellee (state).

*Opinion*

WEST, J. The defendant, Branden Holloway, appeals from the judgment of conviction, rendered after a jury trial, of criminal possession of a pistol or revolver in violation of General Statutes § 53a-217c (a) (1), possession of a weapon in a motor vehicle in violation of General Statutes § 29-38, possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b) and possession of narcotics with intent to sell within 1500 feet of a public housing project in violation of General Statutes § 21a-278a (b). The defendant makes several claims on appeal. First, he claims that the court improperly removed from the jury the determination of whether he met the statutory definition of a drug-dependent person. Next, the defendant claims that the court improperly admitted evidence of his prior misconduct. The defendant also claims that the court improperly

failed to instruct the jury on the doctrine of nonexclusive possession with regard to the pistol or revolver. Next, the defendant claims that there is insufficient evidence to support his conviction of possession of a weapon in a motor vehicle. Last, the defendant claims that the court imposed an improper sentence for his conviction of criminal possession of a pistol or revolver. We affirm in part and reverse in part the judgment of the trial court.

The jury reasonably could have found the following facts. On the morning of November 28, 2005, Sergeant William Lowe, Detective Mark Lepore and Officer Terrance Blake of the Norwalk police department were assigned to locate and to arrest the defendant pursuant to a warrant for a violation of probation. The three police officers, traveling together in an unmarked police cruiser and dressed in plain clothes, headed to the area surrounding the Colonial Village public housing project—the area they were assigned to search. They were aware that the defendant likely was driving a black Hyundai for which they had the license plate number. The officers drove to a parking area behind a strip mall located at 280 Connecticut Avenue, across the street from Colonial Village. As the officers approached this area, Blake, who was driving, saw a black Hyundai parked perpendicular to a wall. The license plate number matched the one that the officers were given, and Blake parked so that the Hyundai was blocked by the cruiser. Parked next to the Hyundai was a white Nissan Sentra, in which Frank Bruno was seated. The defendant was walking from his vehicle to the Nissan as the officers approached; he was between the two vehicles as the officers exited the cruiser.

Upon exiting the cruiser, the officers identified themselves, drew their revolvers, ordered the defendant to stop and put his hands up and informed him that he was under arrest. The defendant did not comply and moved toward the wall adjacent to where his car was parked. Lepore walked to one side of the Hyundai while

Blake walked between the Nissan and the Hyundai in an effort to cut off any means of escape for the defendant. Lowe, who noticed that Bruno was attempting to swallow something that Lowe believed to be packaged cocaine, approached the Nissan and, through the driver's side window, attempted to stop Bruno from swallowing the contraband by grasping him by the jaw. As Lowe confronted Bruno, Lepore and Blake attempted to place the defendant under arrest and to handcuff him. The defendant became verbally abusive and resisted their efforts to handcuff him by kicking and elbowing the officers, tensing his arms, thrashing his body and limbs about and wrestling with the officers. During this struggle, Lepore, in an effort to gain control of the defendant, punched him multiple times on the back and upper arms. This had no discernible effect because the defendant continued to resist the officers.

At one point during the struggle with the defendant, Blake released his grip on him and retrieved a Taser gun from Lepore's utility belt. Blake warned the defendant twice that if he did not stop resisting, he would be immobilized with the Taser gun. When the defendant did not comply, Blake shot him with the Taser gun in the back after which the defendant fell to the ground and was handcuffed.[1] Soon after the defendant was subdued, Blake searched him and retrieved from his left front pants pocket a plastic bag containing twelve bags of a white powdery substance. Subsequent chemical testing conducted by Lepore and then by Rafal Mielguj, a department of public safety chemist, confirmed that the substance was cocaine. Mielguj determined that the cocaine seized from the defendant weighed approximately seventeen grams and was divided into the twelve bags in amounts varying from about one third of a gram to more than five grams.

---

[1] Subsequent to his arrest, the defendant was admitted to Norwalk Hospital for injuries he sustained during his struggle with police.

During the struggle with the defendant, Lepore radioed for backup assistance. Greg Scully, a Norwalk police officer, responded to Lepore's call. Upon arriving at the scene, Scully saw a man later identified as Sean Sullivan, the defendant's cousin, who was carrying a small gray plastic bag, run from the area. Previously, Sullivan had been seated in the Hyundai during the officers' interactions with the defendant and Bruno. As the defendant was being handcuffed, Sullivan exited the Hyundai and ran away. Scully pursued Sullivan in his vehicle. At no time prior did Lowe, Lepore or Blake observe Sullivan in the Hyundai. Soon after he started pursuing Sullivan, Scully exited his vehicle and continued to pursue him on foot. Scully then tackled and subdued Sullivan. Scully found a loaded nine millimeter Tech-9 handgun along with an instruction manual for the weapon inside the gray plastic bag.

The jury subsequently found the defendant guilty of criminal possession of a pistol or revolver, possession of a weapon in a motor vehicle, possession of narcotics with intent to sell by a person who is not drug-dependent and possession of narcotics with intent to sell within 1500 feet of a public housing project. The court imposed a total effective sentence of fifteen years incarceration. This appeal followed. Further facts will be set forth as necessary.

I

The defendant first claims that the court improperly removed from the jury the determination of whether he met the statutory definition of a drug-dependent person.[2] As a result, the defendant contends, the court

---

[2] Whether a defendant is a drug-dependent person as defined in General Statutes § 21a-240 (18) is a question of fact. *State* v. *Ray*, 290 Conn. 602, 631, 966 A.2d 148 (2009). Under §§ 21a-278 (b) and 21a-240 (18), the defendant was required to prove by a preponderance of the evidence that at the time of the offense, he had a "psychoactive substance dependence on drugs as that condition is defined in the most recent edition of the 'Diagnostic and Statistical Manual of Mental Disorders' of the American Psychiatric Association . . . ." General Statutes § 21a-240 (18).

denied the defendant his constitutional rights to present a defense and to have issues of fact decided by a jury. The defendant asserts, therefore, that his conviction of both possession of narcotics with intent to sell by a person who is not drug-dependent and possession of narcotics with intent to sell within 1500 feet of a public housing project should be reversed and remanded for a new trial.[3]

The state concedes that the court improperly removed from the jury the determination of whether the defendant met the statutory definition of a drug-dependent person. The state, however, argues that the remedy sought by the defendant is inappropriate. The state contends that this court should reverse the defendant's conviction of possession of narcotics with intent to sell by a person who is not drug-dependent only and remand the case with direction to modify that conviction to reflect the lesser included offense of sale of narcotics in violation of General Statutes § 21a-277 (a). We disagree with both parties and reverse only the conviction of possession of narcotics with intent to sell by a person who is not drug-dependent and remand the case for a new trial on that charge.

A

Our Supreme Court has stated that a "trial court should instruct the jury concerning the issue of drug dependency and [a] defendant's burden of proof if it

---

[3] The defendant also claims, for the first time in his reply brief, that he is entitled to a new trial on the conviction of those crimes because the court's improper ruling was a constitutional error amounting to a denial of his right to present the defense that he lacked the intent to sell the narcotics.

"It is a well established principle that arguments cannot be raised for the first time in a reply brief. . . . Arguments first presented in a reply brief impair the opposing party's opportunity to reply in writing." (Citations omitted; internal quotation marks omitted.) State v. Rosario, 113 Conn. App. 79, 93, 966 A.2d 249, cert. denied, 291 Conn. 912, 969 A.2d 176 (2009). Accordingly, we decline to review his claim.

determines that there is any foundation in the evidence, no matter how weak or incredible . . . ." (Internal quotation marks omitted.) *State* v. *Hart*, 221 Conn. 595, 613, 605 A.2d 1366 (1992). Here, the defendant presented evidence of drug dependency. First, the defendant testified that he smoked marijuana on a daily basis and used phencyclidine, otherwise known as PCP, on a weekly basis. The defendant also presented as a full exhibit a discharge summary from his stay at Norwalk Hospital subsequent to his arrest. That summary stated that the defendant had a "[h]istory of daily marijuana use and weekly PCP use." It also stated that a urinalysis showed a positive result for the presence of marijuana and PCP. The defendant's grandmother also testified that she had been aware of his marijuana use and had once seen him under the influence of drugs. The defendant also called as a witness Edward Conway, a probation officer personally familiar with the defendant and his probation file. Conway testified that the defendant had submitted to a urinalysis as a part of his conditions of probation. He testified that it was positive for drug use. Conway also testified that as a result of that positive test, the office of adult probation referred the defendant for substance abuse treatment at Connecticut Renaissance. Last, Conway testified that one of the reasons that the violation of probation warrant was issued was that the defendant tested positive for drug use and was noncompliant with substance abuse treatment. Furthermore, Bruno and Jourden Huertas, the defendant's brother, also testified that the defendant regularly used marijuana and PCP.

During the testimony of James Gadzik, a trauma surgeon who treated the defendant while he was an inpatient at Norwalk Hospital, the defendant attempted to admit into evidence a psychological assessment performed by Sheila Devlin-Craane, a nurse practitioner of psychiatry. That assessment was ordered as a result

of the defendant's having tested positive for drug use after his admission to Norwalk Hospital and was part of his hospital records. Devlin-Craane's assessment indicated that the defendant was dependent on PCP and abused marijuana. The court, however, sustained the state's objection to its admission and, outside the presence of the jury, stated: "Under our law currently, as I understand it, for the purpose of proving that the defendant is drug-dependent . . . you must present evidence from a mental health professional trained in the application of the diagnostic criteria using [the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders of the American Psychiatric Association (DSM-IV)] with respect to the satisfaction of the criteria for drug dependency." The court observed that the assessment likely was based on the defendant's representations regarding his drug use rather than the criteria set out in the DSM-IV and stated that "whether that makes him . . . dependent or not requires an expert."

The court, furthermore, in its charge to the jury, stated: "The defendant has the burden of proving drug dependency by a preponderance of the evidence. Proof by a preponderance of the evidence means considering all the evidence fairly and impartially, enough evidence to produce in your minds a reasonable belief that what is sought to be proven is more likely true than not. . . . I had indicated earlier to the defendant that he had not even presented any evidence under this special defense. And I would have ordinarily ruled that there was no issue on that question, and you may presume that the state does not have to prove he was [not] drug-dependent; you can rely on the assumption. But, because he did introduce some evidence, I am now indicating that whatever evidence [he] did introduce does not meet that standard. *The state does not have to prove as a matter of fact that the defendant was drug-dependent;*

*the state may rely on the presumption that he wasn't drug-dependent.*"[4] (Emphasis added.) We conclude that the court did improperly remove from the jury the determination of whether the defendant met the statutory definition of a drug-dependent person.

B

Although we conclude that the court improperly removed from the jury the determination of whether the defendant met the statutory definition of a drug-dependent person, we must now determine the appropriate remedy. The state argues that it is entitled to a modification of the judgment to reflect a conviction of the lesser included offense of sale of narcotics.[5] *State* v. *Sanseverino*, 291 Conn. 574, 590–98, 969 A.2d 710 (2009) (en banc),[6] a case in which the issue of whether,

[4] The jury requested reinstruction on that charge. The court reinstructed the jury, stating, in relevant part: "The defendant has the burden of proving drug dependency by a preponderance of the evidence, meaning it's more likely than not that is so by the proof he has presented and when the better and weightier evidence is in the defendant's favor. Now, as I recall, there is no evidence presented with regard to the diagnostic—DSM-IV, there [was] no expert called. The defendant did indicate that [he] and other witnesses had used marijuana and other drugs, but not narcotic—not cocaine. I had earlier indicated . . . to the defense counsel that it's my function to determine whether or not the fact that the defendant has presented adequate information. And my function is to determine that what was presented was not adequate. . . . And the element of drug dependency, [that the defendant was not a] drug-dependent person is established adequately."

[5] The record reveals that the court did not instruct the jury on the lesser included offense of possession of narcotics with intent to sell under § 21a-277 (a). See *State* v. *Bradley*, 60 Conn. App. 545, 760 A.2d 520 (§ 21a-277 [a] is lesser offense included within § 21a-278 [b]), cert. denied, 255 Conn. 921, 763 A 2d 1042 (2000).

[6] *State* v. *Sanseverino*, 291 Conn. 574, came to our Supreme Court on the state's motion for reconsideration en banc. Id., 577. In its opinion after reconsideration, our Supreme Court explained that "[i]n *State* v. *Sanseverino*, 287 Conn. 608, 949 A.2d 1156 (2008), this court concluded, inter alia, that the defendant, Paolino Sanseverino, was entitled to reversal of his first degree kidnapping conviction in light of our decision in *State* v. *Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008). In particular, we determined, in accordance with *Salamon*, that the defendant was entitled to a jury instruction that he could not be convicted of the crime of kidnapping unless the jury

and if so, under what circumstances, an appellate court of this state may order the modification of a judgment to reflect a conviction of a lesser included offense, is instructive to our resolution of the state's claim. In *Sanseverino*, the defendant, after a jury trial, had been convicted of, inter alia, kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A). The state, in its motion for reconsideration, argued, among other things, that it was entitled either to retry the defendant for kidnapping or a judgment of conviction of unlawful restraint in the second degree in violation of General Statutes § 53a-96, as a lesser offense included within kidnapping in the first degree. *State* v. *Sanseverino*, supra, 579. Our Supreme Court agreed with the state that it was entitled either to retry the defendant or to a modification of the judgment. Id. In doing so, however, the court stated that it "disagree[d] with the state that the broad issue presented by the state's . . . claim [of] whether, and if so, when, an appellate court may order the modification of a judgment in the manner requested in the present case, is settled in this state." Id., 593.

Our Supreme Court explained that "[i]ndeed, this court never has addressed [that] issue directly. Moreover, there is a distinct split of authority on [that] question among both state and federal courts. Some courts have held that it is appropriate for an appellate court to order the modification of a judgment to reflect a conviction of a lesser included offense, even in the

found beyond a reasonable doubt that the restraint involved in the commission of that crime was not merely incidental to and necessary for the commission of another crime against the victim, in this case, sexual assault in the first degree. *State* v. *Sanseverino*, supra, 624–26. We also held that the state was barred from retrying the defendant on the kidnapping charge because we concluded, on the basis of our review of the record, that no reasonable jury could have found that the restraint used by the defendant in the commission of the kidnapping was not incidental to and necessary for the commission of the sexual assault. See id., 625." *State* v. *Sanseverino*, supra, 577–78.

absence of a jury instruction on that lesser offense, when it is not unfair to the defendant to do so. . . . Other courts have barred such a modification unless the jury has been instructed on the lesser included offense." (Citations omitted.) Id., 593–94. The court concluded that under the "unique circumstances" in *Sanseverino*, the state was entitled to the modification of the judgment that it sought. Id., 595. The court reached that conclusion for four express reasons, "each of which [was] integral to [its] decision." Id. First, there was no reason for the court to believe that the state opted against seeking a jury instruction on the lesser included offense for strategic purposes.[7] Second, the defendant had benefited from the intervening change in the law that resulted from the court's decision in *State* v. *Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008). Third, the defendant did not file an objection to the state's request for modification. Finally, the court concluded that it was not unfair to the defendant to impose a conviction of the lesser included offense. *State* v. *Sanseverino*, supra, 291 Conn. 595. The court emphasized that "it intimate[d] no view as to whether the state would be entitled to such a modification *in the absence of any one of the factors that are present in [that] case.*" (Emphasis added.) Id., 596 n.18. It further referenced "the fact that [it] limit[ed] [its] holding to the particular facts and procedural history of [that] case, and that [it] decline[d] to decide the broader issue presented, namely, under what particular circumstances is it appropriate for an appellate court to require the conviction of a lesser included offense upon reversal of a conviction of the greater offense." Id., 597 n.18.

---

[7] This was so, the court explained, "because prior to the unforeseeable change in the law following the defendant's trial [that resulted from the court's decision in *State* v. *Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008); see footnote 6 of this opinion] the state had no reason to seek a lesser included offense instruction, and, consequently, the state's failure to do so cannot possibly have been the product of a strategic decision." *State* v. *Sanseverino*, supra, 291 Conn. 595.

In the defendant's appeal, each of the factors detailed in *Sanseverino* are not present. First, we consider the factor that there ought to be no reason for this court to believe that the state opted against seeking a jury instruction on the lesser included offense for strategic purposes. See id., 595. We conclude, much as our Supreme Court concluded in *Sanseverino*, that there was *no* purpose for the state to seek an instruction on the lesser included offense, and, therefore, a fortiori, there could not have been a *strategic* purpose. This is so for several reasons. The state was aware that the court considered, wrongly, that an expert witness was required to establish the defendant's drug dependence. The state participated in the argument involving the defendant's attempt to admit into evidence Devlin-Craane's assessment. Therefore, the state knew of the court's ruling concerning the issue of the defendant's evidence of drug dependency before the court charged the jury and, therefore, had no reason to seek an instruction on the lesser included offense. Supporting this conclusion is the fact that in its charge to the jury, the court stated that it "had indicated earlier to the defendant that he had not even presented any evidence under this special defense." This indicates that the state also was aware, prior to the court's instructing the jury, that the defendant had not met his burden of producing evidence, in the court's opinion, of his drug dependence, sufficient to require that the court give such an instruction to the jury and that the court would allow the state to rely on the presumption that the defendant was not drug-dependent. Although we conclude that the state had no reason to seek an instruction on the lesser included offense, and, consequently, the state's failure to do so was not possibly the product of a strategic decision, we conclude that under the circumstances present here, that factor cannot weigh in favor of the state. This is so, in large part, because that circumstance

clearly was predicated on the court's error and not on an unforeseeable, intervening change in the law, as was the case in *Sanseverino*.

We also conclude that the remaining factors detailed in *Sanseverino* do not favor the state's position. There was no intervening change in the law that inured to the benefit of the defendant; the defendant objects to the modification of his conviction; and we cannot conclude, on the basis of the record before us, that it would be fair to modify the judgment to reflect the lesser included offense. See *State* v. *Sanseverino*, supra, 291 Conn. 595.[8] The unusual circumstances of this case lead us

[8] In *State* v. *Ray*, 290 Conn. 602, 966 A.2d 148 (2009), our Supreme Court faced a situation analogous to that which we face in this appeal. In *Ray*, the defendant appealed from the judgments of conviction, rendered after a trial to the court, of sale of narcotics by a person who is not drug-dependent in violation of § 21a-278 (b), claiming, inter alia, that the court improperly found that he had not met his burden of proving his drug dependency. Id., 605–606. In *Ray*, the trial court concluded that the defendant had not presented sufficient evidence of drug dependency to present the issue to the fact finder. Id., 607. As a result, our Supreme Court concluded, "the trial court applied an improper evidentiary standard in determining whether the defendant was drug-dependent, as defined in § 21a-240 (18)." Id., 633.

The court noted that "[a]lthough this conclusion ordinarily would require a remand to the trial court so that the court may apply the correct standard, we conclude that, on the basis of the evidence presented, no reasonable fact finder could conclude that the defendant was not drug-dependent . . . . Accordingly, we conclude that, as a matter of law, the defendant met his burden of proving that he was a drug-dependent person under § 21a-278 (b)." Id., 633–34. The court reversed the convictions under § 21a-278 and remanded the case to the trial court with direction to modify those convictions to reflect the lesser included offense of sale of narcotics in violation of § 21a-277 (a) and for resentencing. Id., 634. It is clear that the court made its decision to reverse the defendant's convictions with direction to modify the judgments to reflect the lesser included offense "[b]ecause [it] concluded that the trial court improperly found that the defendant was not drug-dependent"; id.; and that he had met that burden as a matter of law.

In the present case, we cannot conclude, on the basis of the evidence, that the defendant met his burden of proving that he was a drug-dependent person under § 21a-278 (b) as a matter of law. This conclusion, however, is predicated on the exclusion from evidence of the clinical assessment prepared by Devlin-Craane, in which she diagnosed him as dependent on PCP, the defendant's most compelling evidence of his alleged drug depen-

to conclude that it is inappropriate for this court to order a modification of the judgment to reflect a conviction of the lesser included offense of sale of narcotics. Accordingly, we reverse the conviction of possession of narcotics with intent to sell by a person who is not drug-dependent and remand the case for a new trial on that charge.[9]

## II

The defendant next claims that the court improperly admitted evidence of his prior misconduct. Specifically, the defendant contends that the court abused its discretion in admitting testimony concerning various shootings that occurred prior to his arrest because the incidents were not material to the issue of whether he had knowledge of the gun having been in his car. The defendant further argues that the prejudicial nature of

dency. As a result, we determine that the result reached in *Ray* should not be replicated here. This conclusion is supported by the fact that the defendant in *Ray* also met at least one of the factors announced by our Supreme Court in *Sanseverino* that is not present here. The defendant in *Ray* specifically sought modification of his convictions to reflect the lesser included offense—a circumstance absent in this case.

[9] The defendant also argues that his conviction of possession of narcotics with intent to sell within 1500 feet of a public housing project should also be reversed as a result of the court improperly removing from the jury the determination of whether he was drug-dependent. This claim has no merit. General Statutes § 21a-278a (b) is bereft of any reference to drug dependency as a mitigating factor of the crime it prohibits. Moreover, the defendant's claim that his conviction under § 21a-278a (b) requires a predicate conviction under, in this case, § 21a-278 is also without merit. This is so because "[i]n *State* v. *Player*, 58 Conn. App. 592, 597, 753 A.2d 947 (2000), relying on *State* v. *Denby*, [235 Conn. 477, 668 A.2d 682 (1995)] along with the plain language of § 21a-278a and the legislative history associated therewith, we concluded that § 21a-278a creates a separate substantive offense and that it is not merely a penalty enhancement provision. See also *State* v. *Barber*, 64 Conn. App. 659, 675–76, 781 A.2d 464, cert. denied, 258 Conn. 925, 783 A.2d 1030 (2001). We explained that the legislative history of § 21a-278a (b) reveals that in enacting this statute, the legislature expressed its intent to create a separate substantive offense. *State* v. *Player*, supra, 597; see also *State* v. *Barber*, supra, 675–76." *Charles* v. *Commissioner of Correction*, 112 Conn. App. 349, 353, 962 A.2d 868, cert. denied, 290 Conn. 922, 966 A.2d 235 (2009).

the evidence outweighed its probative value. The state contends that the evidence at issue in this claim was not objected to on the same grounds asserted on appeal, and, therefore, the claim is not reviewable by this court. We agree with the state.

The defendant claims that the court abused its discretion in admitting testimony concerning various shootings that occurred prior to his arrest.[10] Our standard of review of a claim that a court improperly admitted evidence is well established. "The trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence . . . [and its] ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Colon*, 272 Conn. 106, 180, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005). "Our review [however] of evidentiary rulings made by the trial court is limited to the specific legal ground raised in the objection. Practice Book [§§ 60-5 and 5-5]; *State* v. *Rothenberg*, 195 Conn. 253, 262, 487 A.2d 545 (1985); *State* v. *Braman*, 191 Conn. 670, 684–85, 469 A.2d 760 (1983). The reason for this rule is clear: it is to alert the trial court to an error while there is

---

[10] Our review of the record reveals that there were three shootings that Sullivan and Huertas testified about. Sullivan testified about a shooting that took place the night before his and the defendant's arrest. That shooting occurred near the Carlton Court public housing project on November 27, 2005. Huertas testified concerning two shootings, one that took place on Perry Avenue in Norwalk on November 25, 2005, and another that occurred on Westport Avenue in Norwalk on November 27, 2005.

time to correct it; *State* v. *Rothenberg*, supra, 263; *State* v. *Jones*, 193 Conn. 70, 88, 475 A.2d 1087 (1984); and to give the opposing party an opportunity to argue against the objection at trial. To permit a party to raise a different ground on appeal than was raised during trial would amount to 'trial by ambuscade,' unfair both to the trial court and to the opposing party. *State* v. *Brice*, 186 Conn. 449, 457, 442 A.2d 906 (1982); *State* v. *DeGennaro*, 147 Conn. 296, 304, 160 A.2d 480, cert. denied, 364 U.S. 873, 81 S. Ct. 116, 5 L. Ed. 2d 95 (1960)." *State* v. *Baptiste*, 114 Conn. App. 750, 769, 970 A.2d 816 (2009).

During his cross-examination of Sullivan, the prosecutor read into the record portions of Sullivan's written statement made to police after his arrest. Those portions read into the record concerned a November 27, 2005 shooting at the Carlton Court public housing project. See footnote 10 of this opinion. The defendant argues on appeal that he objected to the prosecutor's reading into the record Sullivan's statement and Huertas' testimony concerning two shooting incidents on the ground that they were evidence of prior misconduct that was inadmissible to prove the defendant's bad character or criminal tendencies and that their limited probative value was far outweighed by their prejudicial effects. Our review of the trial transcripts clearly establishes that the legal grounds raised by the defendant in both his objections to the prosecutor's reading into the record Sullivan's written statement and Huertas' testimony were not that the evidence concerned inadmissible prior misconduct. As for Sullivan's statement, the defendant objected because the prosecutor was reading into the record a statement that was not admitted as evidence at that point. Concerning Huertas' testimony, the defendant objected when the prosecutor asked Huertas if two named individuals were with him

during a November 27, 2005 shooting on Westport Avenue in Norwalk. See footnote 10 of this opinion. The defendant expressly stated that the bases for the objection were relevance and that the question was beyond the scope of direct examination, and the state withdrew that question. Because our review of the court's rulings on those objections is limited to the specific legal grounds raised in the objection; see *State* v. *Baptiste,* supra, 114 Conn. App. 769; and inasmuch as the defendant did not object on the grounds that the proffered evidence was inadmissible prior misconduct, we will not review these claims.

## III

The defendant next claims that the court improperly failed to instruct the jury on the doctrine of nonexclusive possession with regard to the pistol or revolver. As a result of this failure, he argues, it is reasonably possible that the jury was misled and thereby impermissibly inferred that he constructively possessed the pistol or revolver solely because he was present in the automobile. We disagree.

The defendant failed either to request a charge on nonexclusive possession or to object to the instruction as given.[11] That circumstance renders his claim unpreserved. See *State* v. *Boyd,* 115 Conn. App. 556, 562, 973

[11] The jury was instructed, in relevant part, as follows: "The element here that the state must prove beyond a reasonable doubt, then, is that he was in possession of a pistol or revolver as claimed by the state. *A person is in possession of a pistol or revolver when he knowingly has control or dominion over that pistol or revolver.* It is the state's claim that the defendant knowingly had that pistol or revolver, that it was there for his use, and that he knew there was a pistol or revolver in the vehicle and that he had been convicted of a felony. Of course, the defense claims that he had no knowledge of the contents, that it belonged to the—to his cousin, and that he wasn't even there when the pistol or revolver was placed in the vehicle.

"The state claims that . . . Sullivan brought the pistol or revolver in, opened the back door while the defendant was sitting there, placed the item in the rear and then went around to sit in the passenger side. That's the evidence that's available for you with regard to this pistol or revolver. It was the defendant's car, according to the state, or . . . [the] defendant was

A.2d 138, cert. denied, 293 Conn. 912, 978 A.2d 1110 (2009); Practice Book § 42-16. He therefore seeks to prevail pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The record is adequate for review, and the claim is of constitutional magnitude, alleging the violation of a fundamental right. "[I]t is . . . constitutionally axiomatic that the jury be instructed on the essential elements of a crime charged. . . . Consequently, the failure to instruct a jury on an element of a crime deprives a defendant of the right to have the jury told what crimes he is actually being tried for and what the essential elements of those crimes are." (Internal quotation marks omitted.) *State* v. *Fleming*, 111 Conn. App. 337, 350, 958 A.2d 1271 (2008), cert. denied, 290 Conn. 903, 962 A.2d 794 (2009). The defendant, however, has not demonstrated that a constitutional violation clearly exists and that he was clearly deprived of a fair trial. We therefore conclude that his claim is without merit.

Our standard of review with regard to claims of instructional error is well established. "[I]ndividual jury instructions should not be judged in artificial isolation, but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such

the primary user of the car, although it was registered in the name of the defendant's grandmother.

"The defendant, the state claims, was aware of the pistol or revolver in the car, it was there for his purposes, and that can be inferred from the circumstances surrounding the bag, the appearance of the bag and where it was placed and when it was placed. . . .

"But for this particular count, *the state must prove that the defendant did in fact have control or dominion, possession of this weapon, that he knew it was a weapon, that he knew it was there*, and the state must prove it was a weapon—a pistol or revolver with a barrel of less than twelve inches, and that he was previously convicted of a felony. If you find that established, that he had possession of this weapon, this firearm, that he knew it was a firearm, he knew it was there, he had control over it and that he was previously convicted of a felony, you would be warranted in finding the defendant guilty of that first count. (Emphasis added.)

a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Where . . . the challenged jury instructions involve a constitutional right, the applicable standard of review is whether there is a reasonable possibility that the jury was misled in reaching its verdict." (Citation omitted; internal quotation marks omitted.) *State* v. *Boyd*, supra, 115 Conn. App. 562–63.

The defendant does not argue that the court improperly instructed the jury with regard to the elements of the crime of criminal possession of a pistol or revolver. Instead, he contends that, under the facts and circumstances of this case, the court, sua sponte, should have instructed the jury on the doctrine of nonexclusive possession.[12] We conclude, following a thorough review of the entire jury charge, in light of the evidence presented at trial, that the court properly instructed the jury on the elements of the crime.

The jury reasonably could not have been misled by the court's charge in the manner asserted by the defendant. The court clearly instructed the jury that to find

[12] "Where the defendant is not in exclusive possession of the premises where the [illegal item is] found, it may not be inferred that [the defendant] knew of the presence of the [illegal item] and had control of [it], unless there are other incriminating statements or circumstances tending to buttress such an inference. . . . Stated otherwise, [t]he doctrine of nonexclusive possession provides that where there exists access by two or more people to the [contraband] in question, there must be something more than the mere fact that [contraband was] found to support the inference that the [contraband was] in the possession or control of the defendant. . . . Thus, the charge is appropriate in circumstances where the defendant has possession of the premises along with at least one other individual." (Citation omitted; internal quotation marks omitted.) *State* v. *Crawley*, 93 Conn. App. 548, 566–67 n.9, 889 A.2d 930, cert. denied, 277 Conn. 925, 895 A.2d 799 (2006).

that the defendant had constructive possession of the pistol or revolver it would have to determine that he had knowledge of the nature of the weapon, of its presence within the vehicle and was in a position to exercise dominion and control over the weapon. Importantly, the court instructed the jury not only that the defendant had to have such knowledge, but also that he must have acted intentionally. In another portion of the jury instruction, the court explained fully the definition of intent. "[Focusing] on [a] defendant's knowledge and control and intentional action with regard to [a] firearm [in a jury instruction] properly direct[s] the jury and preclude[s] it from considering that the mere presence of the defendant was enough to satisfy the elements of the crime." Id., 564. As a result, the given instruction, though not explicitly addressing nonexclusive possession, nonetheless covered the most important protective elements of a charge on the doctrine: the defendant's knowledge and intent to possess the weapon. See *State* v. *Williams*, 258 Conn. 1, 12, 778 A.2d 186 (2001) (to establish possession of firearm for conviction under § 53a-217 by constructive possession, state required to prove beyond reasonable doubt defendant exercised intentional dominion and control over firearm and had knowledge of its character).

Last, this is not a case in which the court declined a requested instruction; the defendant made no request of the court to charge the jury on the doctrine of nonexclusive possession. A defendant's right to due process is implicated by a court's failure to instruct the jury on the essential elements of the crime charged. *State* v. *Cote*, 286 Conn. 603, 626, 945 A.2d 412 (2008). "A trial court [however] has no independent obligation to instruct, sua sponte, on general principles of law relevant to all issues raised in evidence . . . . Rather, it is the responsibility of the parties to help the court in fashioning an appropriate charge." (Citation omitted;

internal quotation marks omitted.) *State* v. *Arena*, 235 Conn. 67, 75, 663 A.2d 972 (1995); see also *State* v. *Crawley*, 93 Conn. App. 548, 568, 889 A.2d 930 (rejecting defendant's claim that court sua sponte should have instructed jury on doctrine of nonexclusive possession where defendant failed to request such charge and failed to object to its absence), cert. denied, 277 Conn. 925, 895 A.2d 799 (2006).[13] Because we conclude that the defendant has not demonstrated that a constitutional violation clearly existed, depriving him of a fair trial, his claim must fail. See *State* v. *Golding*, supra, 213 Conn. 240.[14]

## IV

The defendant claims that there is insufficient evidence to support his conviction of possession of a weapon in a motor vehicle. Specifically, he claims that the state failed to prove beyond a reasonable doubt that neither occupant of the vehicle had a proper permit to carry the pistol or revolver. We disagree.

[13] The defendant also seeks to prevail on his claim under the plain error doctrine. See Practice Book § 60-5. "It is . . . well established that plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A defendant cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Jackson*, 73 Conn. App. 338, 386, 808 A.2d 388, cert. denied, 262 Conn. 929, 814 A.2d 381 (2002). Having concluded that the defendant was not deprived of a fair trial when the court did not sua sponte instruct the jury on nonexclusive possession, we also conclude that the claim does not warrant application of the plain error doctrine. See *State* v. *Boyd*, supra, 115 Conn. App. 566 n.6.

[14] The defendant, in the same portion of his brief, also argues that the court improperly instructed the jury regarding the state's burden in proving the charge of possession of a weapon in a motor vehicle. The defendant's analysis in that section of his brief was dedicated entirely to his claim that the court improperly failed to instruct the jury on the doctrine of nonexclusive possession with regard to the firearm.

"We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.) *Taylor* v. *Mucci*, 288 Conn. 379, 383 n.4, 952 A.2d 776 (2008). We

In *State* v. *Smith*, 9 Conn. App. 330, 338, 518 A.2d 956 (1986), we noted that the lack of a proper permit is an essential element for a violation of § 29-38 that the state must prove beyond a reasonable doubt. At trial, the defendant stipulated that he had no permit for the weapon. The state, however, pursuant to § 29-38 must also prove that *no one* else in the vehicle had a proper permit to carry the weapon. See *State* v. *Mebane*, 17 Conn. App. 243, 246, 551 A.2d 1268, cert. denied, 210 Conn. 811, 556 A.2d 609, cert. denied, 492 U.S. 919, 109 S. Ct. 3245, 106 L. Ed. 2d 591 (1989). The defendant asserts on appeal that the only evidence that Sullivan, the co-occupant of the vehicle, did not have a proper permit for the weapon was Sullivan's testimony that he had pleaded guilty to carrying a pistol or revolver without a permit in violation of General Statutes § 29-35. The defendant argues that, because of hearsay concerns, "[t]he fact that one or more persons jointly charged with the commission of a crime pleaded guilty is not admissible on the trial of another person so charged, to establish that the crime was committed." *State* v. *Pikul*, 150 Conn. 195, 198, 187 A.2d 442 (1962). We are not persuaded.

The facts present in this appeal are distinguishable from those in *Pikul*, and, therefore, its holding is inapplicable here. Sullivan testified at the defendant's trial that he had pleaded guilty to carrying a pistol or revolver without a permit while the defendant was convicted of possession of a weapon in a motor vehicle. Simply put, this is not the situation where one or more persons were charged with the commission of a crime. Sullivan and the defendant were charged with the commission of two distinct crimes that merely had the overlapping element of proof that no one charged, or present in the vehicle, had a proper permit for the weapon.[15] Sullivan's

therefore decline to review this instructional claim because it was briefed inadequately.

[15] Although the defendant was convicted of criminal possession of a firearm in violation of § 53a-217c (a) (1), that conviction is not relevant to this

testimony only related to his admission that he had pleaded guilty to a separate charge and was not hearsay evidence concerning the defendant's guilt. Cf. *State* v. *Ortiz*, 280 Conn. 686, 704 n.13, 911 A.2d 1055 (2006) ("a plea of guilty is, in effect, merely a confession of guilt which, *having been made by one of those charged with the crime*, can be no more than hearsay as to *another who is so charged*" [emphasis added; internal quotation marks omitted]); see also *State* v. *Gargano*, 99 Conn. 103, 108, 121 A. 657 (1923) ("[t]he confession involved in a plea of guilty in court by one [jointly charged with the accused of] a crime, is as much hearsay as if the confession were made out of court").

The defendant also asserts that the evidence was admitted for impeachment purposes only and therefore could not properly have been used by the jury for the substantive purpose of proving that Sullivan did not have a permit for the weapon. The defendant mischaracterizes the nature of the testimony. Sullivan was a defense witness. Although a party may impeach his own witness in the same manner as an opposing party's witness; *State* v. *McCarthy*, 105 Conn. App. 596, 613, 939 A.2d 1195, cert. denied, 286 Conn. 913, 944 A.2d 983 (2008); our review of the transcripts clearly establishes that the purpose of Sullivan's testimony regarding his guilty plea was to establish that the defendant did not possess nor was aware of the presence of the weapon in the vehicle. In short, it was offered to substantively establish that Sullivan was the owner of the gun. Because a guilty plea is "a confession which admits that the accused did various acts"; (internal quotation marks omitted) *State* v. *Nelson*, 221 Conn. App. 635, 641, 605 A.2d 1381 (1992); and the testimony was offered as proof that Sullivan engaged in those acts and not to impeach him, it was properly before the jury as proof

issue. This is so because for the defendant to have been convicted for violating § 53a-217c (a) (1), the state did not have to prove that no one in the motor vehicle had a lawful permit for the firearm.

that he had no proper permit for the weapon. Therefore, this claim fails.

## V

Last, the defendant claims that the court imposed an improper sentence for his conviction for criminal possession of a pistol or revolver. Specifically, he contends that the court mistakenly imposed a sentence of five years incarceration, two of which were mandatory, for his conviction of criminal possession of a pistol or revolver pursuant to § 53a-217c (a) (1), which has no minimum mandatory sentence.[16] The state concedes, and we agree, that the court erred in its sentencing of the defendant for his conviction of criminal possession of a pistol or revolver. Because it is axiomatic that this court is vested with the authority to remand a case for resentencing; see, e.g., *State* v. *Hanson*, 210 Conn. 519, 556 A.2d 1007 (1989); *State* v. *Carpenter*, 19 Conn. App. 48, 562 A.2d 35, cert. denied, 213 Conn. 804, 567 A.2d 834 (1989); the appropriate remedy for this claim is a remand to the trial court with direction to resentence the defendant. See *State* v. *Dennis*, 30 Conn. App. 416, 426, 621 A.2d 292, cert. denied, 226 Conn. 901, 625 A.2d 1376 (1993).

The judgment is reversed as to the conviction of possession of narcotics with intent to sell by a person who is not drug-dependent and the case is remanded for a new trial on that charge only; the judgment is reversed as to the sentence imposed on the conviction of criminal possession of a pistol or revolver and the case is remanded with direction to resentence the defendant on that charge only. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

---

[16] General Statutes § 53a-217, titled, "Criminal possession of a firearm or electronic defense weapon: Class D felony," does contain a minimum mandatory sentence. It provides in relevant part: "(b) Criminal possession of a firearm or electronic defense weapon is a class D felony, for which two years of the sentence imposed may not be suspended or reduced by the court." General Statutes § 53a-217 (b).